WATKINS, Judge.
This is a devolutive appeal taken by defendant, Lawrence Boquet, from a judgment of the trial court awarding plaintiffs, Allen Price and Rena LeBoeuf Price, damages for defendant’s interference with plaintiffs’ exercise of their trapping lease.
We have thoroughly reviewed the record including the exhibits and transcript of testimony, and find the trial court’s written reasons for judgment contain an excellent exposition of the facts and (with the minor addition set forth below) a correct application of the law, and accordingly quote from them in their entirety:
“This suit for damages, including the loss of four (4) dozen animal traps and *399 loss of income was brought by Mr. and Mrs. Allen Price, Sr. against Mr. Lawrence Boquet. The plaintiffs contend that while trapping on a valid trapping lease held by them, on December 10,1978, the defendant, Lawrence Boquet, threatened them, picked up their traps and burned the marshland that was the subject of their lease. This action by the defendant caused them to lose their traps and prevented them from enjoying the profits from the remainder of the 1978-1979 trapping season. The defendant answered the petition denying all of plaintiff’s (sic) allegations. The Court rendered judgment in favor of plaintiffs for the following reasons:
“The evidence is clear that Mr. and Mrs. Allen Price, Sr. were granted the right to trap fur bearing animals on certain property in Terrebonne Parish, Louisiana, owned by Mr. Elie A. Klingman. The particular tract in question had a front of three (3) arpents on the left descending bank of Bayou Terrebonne by depth of two (2) arpents and was designated as being contained in Lot 1 of Section 48, T20S, R18E.
“This lease was located near the southwestern most corner of Section 48.
“Though uncorroborated, Mr. Lawrence Boquet claims he had for some time leased portions of Section 48 and 49 from the A. M. Dupont Corporation. He also claims he had the trapping rights on the rear or eastern portion of Section 48 by verbal agreement with one of the multiple owners of Section 48. However, Mr. Boquet freely admitted he had no idea where the boundary lines of any of the property owners in the area were.
“In any event, at some point in time, prior to December 7, 1978, Mrs. Price set out six (6) dozen traps on her lease. Mrs. Price testified that she set out her trap line extending eastward from the closed end of a slip located on her lease with the last trap being about three hundred (300') feet from the bank of Bayou Terrebonne. This obviously put her traps well within the boundaries of her 3 arpents by 2 arpents lease. Mrs. Price collected the animals from her traps on December 7th, 8th and 9th and secured pelts which she later sold for $115.00.
“On December 10, 1978, Mrs. Price and her husband were in their boat crossing a marsh pond headed west toward their lease when they encountered Mr. Lawrence Boquet, on foot, standing on the eastern end of the pond on or near their lease. Mr. Boquet was, at the time, armed with a .22 cal. rifle. When the Prices reached a point about 125' away, Mr. Boquet stopped them. The testimony is unclear exactly what was said except that both parties confirmed that Mr. Bo-quet did in fact tell the Prices to ‘get the hell off his lease.’
“Following this, the Prices withdrew and noted that Boquet was, in fact, picking up some of their traps. Mr. Boquet admitted to removing at least two (2) dozen traps and putting them in a pile somewhere near the pond. Mrs. Price testified that although she attempted to retrieve her traps some days later she could only find two (2) dozen of the six (6) dozen she had put out. At some point later Mrs. Price claims Mr. Boquet telephoned her and told her he was going to burn the marsh. Mr. Boquet also admitted that he did, in fact, set fire to the area he intended to trap, which was con-tigious (sic) to that leased by Mr. and Mrs. Price. Mrs. Price discontinued her trapping on the lease for the remainder of the season.
“This Court is satisfied that Mrs. Price had, in fact, placed her traps within the boundaries of her lease. By the defendant’s own admission, he had no idea where any of the boundaries were. The defendant further admitted that he had taken the traps belonging to Mrs. Price and moved them to another position. Although he only admitted to taking two (2) dozen traps this court is convinced that the number of traps amounted to four (4) dozen. The contention that the defendant believed the traps to be within the boundaries of his lease does not persuade this Court. The defendant, certainly *400 knew the traps he confiscated belonged to Mr. and Mrs. Price. This, in itself, was an unlawful conversion. The fact remains that the traps were lawfully placed within the boundaries of the Price lease. The fact remains also that four (4) dozen traps were never recovered by Mr. and Mrs. Price, nor were the traps ever returned to them. The Court therefore finds that the value of the lost traps to be the sum of ONE HUNDRED FORTY FOUR AND NO/100 ($144.00) DOLLARS.
“The plaintiffs seek compensation for the loss of income as a result of the unlawful conversion of their traps, the burning of their lease and the intimidation by the defendant. With regard to the burning of the lease, this Court is not satisfied that such was detrimental. Although the defendant admitted that he burned his own lease which, in turn burned the plaintiffs’ lease, there was adequate testimony to the effect that marsh burning is an accepted and universal practice. Such practice is generally considered to be beneficial rather than detrimental. This Court is convinced, however, that the loss of the four (4) dozen traps would and did have an effect on the plaintiffs’ income from their lease. The most difficult problem is the amount of the loss. Trapping of wild animals is, in itself, very speculative in nature. The Price lease was extremely small in size compared to most trapping leases. There was evidence to the effect that the Prices recovered so much over a three day period, and asked this Court to compute the daily earnings per day over a number of days trapped to find the loss. However, this Court finds this too speculative, considering the small acreage. Should this be broken down to earnings per acre, an average trapping lease, which is much larger would yield several hundred thousand dollars per season. In light of the speculative nature of the problem this Court finds an award of SEVEN HUNDRED AND FIFTY ($750.00) DOLLARS to be reasonable under the circumstances.
“Further since this was an unlawful conversion and the plaintiffs’ are entitled to general damages for their inconvenience, the Court finds the sum of TWO HUNDRED FIFTY AND NO/100 ($250.00) DOLLARS reasonable.
“The Court further awards interest at the rate of seven (7%) per cent per annum on the sum of the above awards from judicial demand, until paid and condemns the defendant to pay all court costs incurred.
“These reasons for judgment are rendered, read and signed in Chambers in Houma, Louisiana, on this 10th day of April, 1980.”
We find that the facts as presented in the written reasons for judgment require the awarding of damages for loss of income for a reason in addition to the unlawful conversion of the traps. Boquet appeared with a rifle while the plaintiffs were exercising their lawful rights under their trapping lease and told them to “get the hell off my lease.” (The lease was plaintiffs’, not Bo-quet’s, as Boquet somewhat equivocally later admitted.) He removed the traps owned by the Prices and burned the marsh. Although burning the marsh was somewhat customary, intimidation was clearly one of Boquet’s purposes. Certainly, Boquet’s conduct was intended to scare the Prices off their lease, and his threatening conduct as well as unlawful conversion of the traps, prevented the Prices from trapping on their lease. We find that the Prices had a legitimate fear of violent consequences should they make further attempts to trap their lease. That being the case, the Prices are clearly entitled to lost income.
With that minor addition, we are in full accord with the written reasons for judgment. In any event, we do not find the trial court’s determination manifestly erroneous or clearly wrong. See Canter v. Koehring Co., 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1979).
The judgment of the trial court is affirmed, at appellant’s cost.
AFFIRMED.